OPINION JUDGMENT ENTRY
{¶ 1} Appellant George Keeton appeals the decision of the Richland County Court of Common Pleas that found him guilty of one count of kidnapping; one count of aiding and abetting kidnapping; two counts of rape; two counts of aiding and abetting rape; one count of tampering with evidence; one count of bribery; one count of felonious assault; and one count of aiding and abetting felonious assault. The following facts give rise to this appeal.
 {¶ 2} On August 19, 2002, the victims in this case, Ashley Gaines and Anna Adkins, met Richard Myers at a Speedway gas station. Myers asked the girls if they would like to go to a party with him. Gaines, Adkins and Myers went to appellant's home. Thereafter, the entire group went to Bell Street. Gaines and Adkins drove their vehicle to the Bell Street address. After leaving the Bell Street address, Gaines, Adkins, Myers and appellant made several other stops and eventually went to Fantasyland
 {¶ 3} At Fantasyland, appellant paid for everyone's admission. After spending some time at Fantasyland, the group left and returned to the Speedway gas station. At that point, Gaines, Adkins, Myers, Jason Flannery and appellant exited the van they had been traveling in and entered Myers' vehicle. While at the Speedway gas station, appellant accused Gaines and Adkins of stealing money from him. Gaines and Adkins exited the vehicle for a short while and subsequently re-entered Myers' vehicle in order to go for a ride.
 {¶ 4} While driving around in Myers' vehicle, appellant again brought up the subject of stolen money. Both Gaines and Adkins denied taking the money. At some point, Gaines became sick and they had to stop the vehicle in order for her to vomit. Upon re-entering the vehicle, appellant again mentioned the stolen money and ordered Gaines and Adkins to remove their clothing. Gaines and Adkins were also ordered to have sexual contact with each other while in the vehicle. At one point, appellant punched both girls in the face. Gaines was also physically forced to perform oral sex on appellant.
 {¶ 5} Thereafter, Adkins was ordered out of the vehicle. A short time later, Gaines was also ordered out of the vehicle. Both girls were naked. Gaines and Adkins went to separate residences requesting assistance. Subsequently, both girls were transported to Ashland Hospital where they were examined.
 {¶ 6} Appellant, Meyers and Flannery were eventually arrested and incarcerated in the Richland County Jail. On January 8, 2003, the Richland County Grand Jury indicted appellant.
 {¶ 7} This matter proceeded to trial on March 25, 2003. Following deliberations, the jury found appellant guilty as charged in the indictment. On April 2, 2003, the trial court sentenced appellant to a total term of forty years in prison. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 8} "I. Defendant was denied his right to confrontation and cross-examination when an unauthenticated letter, exhibit 21, was offered into evidence.
 {¶ 9} "II. Defendant was denied a fair trial and impartial jury when jurors were excused for cause by the court without granting an opportunity to counsel to inquire of the jurors concerning their fairness or ability to serve.
 {¶ 10} "III. Defendant was denied due process of law when he was allowed to be convicted of an offense that was not proven beyond a reasonable doubt to have been committed in the county of trial.
 {¶ 11} "IV. Defendant was denied a fair trial by reason of improper prosecutorial argument.
 {¶ 12} "V. Defendant was denied due process of law when he was allowed to be convicted as an aider and abettor without proof of any culpable mental state.
 {¶ 13} "VI. Defendant was denied effective assistance of counsel.
 {¶ 14} "VII. Defendant was denied due process of law when he was convicted of tampering with evidence.
 {¶ 15} "VIII. Defendant was denied due process of law when he was convicted of bribery.
 {¶ 16} "IX. Defendant was denied due process of law when he was convicted of kidnapping.
 {¶ 17} "X. Defendant was denied due process of law when he was convicted of rape.
 {¶ 18} "XI. Defendant was denied due process of law and was subjected to multiple punishments when the court failed to merge various offenses.
 {¶ 19} "XII. Defendant was denied due process of law when he was sentenced to a term of imprisonment of forty (40) years.
 {¶ 20} "XIII. Defendant was denied due process of law when he was adjudicated a sexual predator."
 I {¶ 21} In his First Assignment of Error, appellant contends he was denied his right of confrontation and cross-examination when an unauthenticated letter, Exhibit 21, was offered into evidence. We disagree.
 {¶ 22} After appellant was incarcerated in the Richland County Jail, Corrections Officer Karla Likes found a letter, in appellant's jail cell, written by Myers. The state introduced the letter at trial to establish that appellant, Myers and Flannery had engaged in a conspiracy to avoid prosecution and conviction. The trial court admitted the letter, into evidence, as Exhibit 21, on the basis that it contained statements of a co-conspirator made in furtherance of a conspiracy.
 {¶ 23} Appellant makes three arguments in support of this assignment of error. First, appellant maintains any conspiracy that may have existed ended when the parties were arrested. Second, appellant contends there is no evidence Myers wrote the letter. Third, the trial court did not properly consider Evid.R. 801(D)(2)(e).
 {¶ 24} As to appellant's first argument, we find the evidence supports the conclusion that the conspiracy did not end when the parties were arrested. Instead, the letter from Meyers, to appellant, informed appellant how he should testify in order to avoid conviction of the crimes. The Ohio Supreme Court has recognized the admissibility of this type of evidence in Statev. DeRighter (1945), 145 Ohio St. 552. The Court stated:
 {¶ 25} "* * * [T]he single fact that the crimes already had been committed does not render this evidence inadmissible if the acts and declarations occurred during the pendency of the unlawful enterprise and in furtherance of the common object." Id. at 558.
 {¶ 26} In support of this conclusion, the Court cited 2 Wharton on Criminal Evidence, 11 Ed., 1205, Section 715, which provides:
 {¶ 27} The acts and declarations of a conspirator are admissible against a coconspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the offense, but also its subsequent concealment. The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication." Id. at 558-559.
 {¶ 28} Thus, we conclude the trial court properly admitted Exhibit 21 as the conspiracy had not terminated following the parties' arrests. Instead, Myers and appellant continued to conspire in order to avoid conviction.
 {¶ 29} Appellant next argues there is no evidence Myers wrote the letter and therefore, Exhibit 21 was not properly authenticated. Evid.R. 901 addresses the requirement of authentication or identification. This rule provides:
 {¶ 30} "(A) General provision
 {¶ 31} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 {¶ 32} "(B) Illustrations
 {¶ 33} "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 {¶ 34} "Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be. * * *"
 {¶ 35} In the case sub judice, Corrections Officer Karla Likes testified about the letter. The letter was written to "George" and found in appellant's cell. Tr. Vol. III at 698, 688-694. The letter was signed "Li'l Bro." Tr. Vol. III at 706. Corrections Officer Likes testified that Myers was usually referred to as "Li'l Bro" at the county jail. Tr. Vol. III at 707. Further, Li'l Bro made three references to "my car" in the letter. Tr. Vol. III at 701, 705. The victims testified the assault occurred, in Myers vehicle, while Myers was driving. Tr. at 30, 147.[1]
 {¶ 36} We conclude this testimony, by Corrections Officer Likes and the victims, established that Myers, as "Li'l Bro," sent the letter to appellant. Also, appellant, on direct examination, admitted that he received a letter from Myers. Tr. Vol. V at 920. Thus, the letter was properly authenticated, under Evid.R. 901(B)(1), based upon the testimony of the witnesses.
 {¶ 37} Finally, appellant contends the trial court did not properly consider Evid.R. 801(D)(2)(e). This rule provides that a statement is not hearsay if it is offered against a party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Appellant claims the prosecution did not meet its burden under Evid.R. 801(D)(2)(e) because it did not prove that a conspiracy existed, that he was a member of the conspiracy and that the hearsay statement was made in the course and in furtherance of the conspiracy.
 {¶ 38} As noted above, the conspiracy to cover up this crime existed and did not terminate upon the arrest of appellant and Myers. Instead, as evidenced by the letter, Myers continued to communicate, with appellant, in order to avoid conviction in this matter. Appellant was part of the conspiracy to avoid conviction as the letter was addressed to him and discovered in his jail cell. Thus, we conclude the trial court complied with Evid.R. 801(D)(2)(e) when it admitted Exhibit 21 into evidence.
 {¶ 39} Appellant's First Assignment of Error is overruled.
 II {¶ 40} In his Second Assignment of Error, appellant maintains he was denied a fair and impartial jury when prospective jurors were excused, for cause, by the trial court, without granting defense counsel an opportunity to inquire whether they could be fair and impartial. We disagree.
 {¶ 41} Appellant challenges the dismissal of three prospective jurors for cause. The trial court excused Gumbert because she knew the victims and they were her sister's best friends. Tr. Vol. I at 17. The trial court dismissed Fagan because Adkins lived beside her son and caused some problems as a neighbor. Tr. Vol. I at 18. Finally, the trial court dismissed Coffman because he knew Detective Mack as a result of some criminal proceedings his father had with Detective Mack. Tr. Vol. I at 25.
 {¶ 42} A court's determination in a voir dire proceeding of a prospective juror's fairness and impartiality constitutes reversible error only when it can be shown that the court, in conducting the examination, clearly abused its discretion. Statev. Williams (1983), 6 Ohio St.3d 281, 288, citing State v.Wilson (1972), 29 Ohio St.2d 203, 211; State v. Ellis (1918),98 Ohio St. 21, paragraph one of the syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 43} The record indicates defense counsel did not object to the dismissal of these prospective jurors for cause. Therefore, we review this assignment of error under a plain error analysis pursuant to Crim.R. 52(B). This rules provides, "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We do not find the dismissal of Gumbert, Fagan and Coffman rises to the level of plain error. In fact, the dismissal of these prospective jurors assured appellant a fair trial because all three prospective jurors admitted they could not be fair and impartial.
 {¶ 44} Appellant's Second Assignment of Error is overruled.
 III {¶ 45} Appellant maintains, in his Third Assignment of Error, he was denied due process of law because he was convicted of an offense that was not proven, beyond a reasonable doubt, to have been committed in Richland County. We disagree.
 {¶ 46} The trial court instructed the jury, as follows, concerning venue:
 {¶ 47} "When a crime or element of a crime is committed in a motor vehicle and it cannot be reasonably determined in which jurisdiction the crime was committed the accused person can be tried in any county through which the motor vehicle passed during the crime. Consequently, if you conclude that a crime occurred in a motor vehicle and during the crime the car passed through Richland County, that would be sufficient to prove venue in Richland County, Ohio." Tr. Vol. V at 1008-1009.
 {¶ 48} Appellant does not allege which offenses were improperly prosecuted in Richland County. Appellant merely claims that Ashland County is the proper venue. Under R.C. 2901.12, we conclude venue was proper in Richland County. This statute provides, in pertinent part:
 {¶ 49} "(B) When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed."
 {¶ 50} Clearly, the trial court patterned its jury instruction after R.C. 2901.12(B).
 {¶ 51} However, R.C. 2901.12(H) is also applicable. This statute provides, in part:
 {¶ 52} "(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 {¶ 53} "(1) The offenses involved the same victim, or victims of the same type or from the same group.
 {¶ 54} "* * *
 {¶ 55} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 {¶ 56} "(4) The offenses were committed in furtherance of the same conspiracy.
 {¶ 57} "* * *
 {¶ 58} "(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination."
 {¶ 59} The record supports the conclusion that venue was proper in Richland County. First, the chain of events commenced, in Richland County, at the Speedway gas station when appellant became violent toward the victims. Tr. Vol. I at 145, 186-189; Tr. Vol. V at 864. Second, appellant's residence was in Richland County. Tr. Vol. IV at 775, 816. Third, appellant's co-conspirators were arrested in Richland County. Fourth, appellant and his co-conspirators moved Adkins' vehicle from the Brown Street residence, in Richland County, to the Bell Street address, also located in Richland County. Tr. Vol. III at 609-622; Tr. Vol. IV at 778-789.
 {¶ 60} Fifth, appellant committed the offenses while traveling from Richland County through Morrow County, Ashland County and returning to Richland County. Tr. Vol. I at 133-176. Sixth, appellant admitted to striking the victims and subsequently returning to his residence in Richland County. Tr. Vol. V at 910-916, 941. Seventh, appellant committed the bribery offense while incarcerated in the Richland County Jail. Tr. Vol. V at 920-921; 680-683; Tr. Vol. V at 949-950. Eighth, one of the victim's shorts and panties were found alongside the road in Richland County. Tr. Vol. III at 631-632.
 {¶ 61} The record supports the conclusion that many of the elements of each individual crime occurred in the chain of events and line of travel within Richland County. Thus, venue was proper, in Richland County, under R.C. 2901.12(B) and (H).
 {¶ 62} Appellant's Third Assignment of Error is overruled.
 IV {¶ 63} Appellant contends, in his Fourth Assignment of Error, that he was denied a fair trial by reason of prosecutorial misconduct during closing argument. We disagree.
 {¶ 64} Specifically, appellant refers to statements the prosecutor made that appellant was guilty beyond a reasonable doubt and that the two victims were telling the truth. See Tr. Vol. V at 981, 984-985. In addressing a claim for prosecutorial misconduct, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights. State v. Smith
(1984), 14 Ohio St.3d 13, 14. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219. A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.State v. Treesh, 90 Ohio St.3d 460, 464, 2001-Ohio-4.
 {¶ 65} We do not find the statement, by the prosecutor, that the facts of the case have been proven beyond a reasonable doubt, to be improper. Therefore, there is no need to determine whether the comment affected appellant's substantial rights. However, "[i]t is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness." State v.Williams, 79 Ohio St.3d 1, 12, 1997-Ohio-407.
 {¶ 66} The prosecutor made the following comments concerning the credibility of the victims:
 {¶ 67} "When you're looking at the issue of credibility of the witnesses I want you to consider a few other things. Remember when this first happened, Anna and Ashley, Anna first was let out at the Rupple house, Ashley went to the Wander house, and they told Mr. Rupple as well as Mr. Wander what happened. They told Sergeant Simms what happened. They told the EMS guys what happened. They told Dr. Cover, the SANE nurses what happened. The girls told all these people right after this incident happened virtually the same story. They were separate and apart from each other. They had absolutely no opportunity to get together, to concoct a story, to get the story straight, because they were separated as a result of what George Keeton and his buddies did. And again, their two stories to all of those people were amazingly consistent.
 {¶ 68} "If they were lying to you how would that happen? How would that happen? They had no chance to get their stories straight, no chance to get together and make up lies, and there is a reason for that. It's because they're telling you the truth. There is no other explanation." Tr. Vol. V at 984-985.
 {¶ 69} The prosecutor did not express his personal belief as to the credibility of the victims. Instead, he informed the jurors how to consider the issue of credibility. In doing so, he referred to the evidence that was presented, during the course of the trial, and stated that due to the consistency in the evidence, the victims were telling the truth. We do not find this comment to be improper. Further, even if the comment was improper, we do not find it prejudicially affected appellant's substantial rights. Despite this comment, appellant received a fair trial.
 {¶ 70} Appellant's Fourth Assignment of Error is overruled.
 V {¶ 71} In his Fifth Assignment of Error, appellant claims he was denied due process of law when he was convicted as an aider and abettor without proof of any culpable mental state. We disagree.
 {¶ 72} The trial court instructed the jury as follows concerning the crime of aiding and abetting the kidnapping:
 {¶ 73} "He's [appellant] charged first with aiding and abetting the kidnapping of Ashley, or Anna Adkins and Ashley Gaines. Before you can find him guilty of either of those crimes you must find beyond a reasonable doubt that on or about August 19, 2002 in Richland County, Ohio he aided or abetted another who did by force or threat remove the relevant victim, Anna Adkins in the first charge, and Ashley Gaines in the second charge, from the place where she was found, or restrained her of her liberty for the purpose of engaging in sexual activity with her against her will.
 {¶ 74} "* * *
 {¶ 75} "I've used the terms aided or abetted another in a kidnapping. Aided or abetted means supported, assisted, encouraged, cooperated with, advised or incited. Mr. Keeton cannot be found guilty of aiding or abetting a crime unless the crime was actually committed, but it is no defense to a charge of aiding or abetting a crime that no person whom Mr. Keeton aided or abetted has already been convicted of a crime as the principle offender." Tr. Vol. V at 1008-1009.
 {¶ 76} Appellant argues the instruction on aiding and abetting was deficient because it omitted the culpable mental state required for the commission of the underlying offense. The Tenth District Court of Appeals addressed a similar argument inState v. Sapp (Aug. 15, 1995), Franklin App. No. 94APA10-1524. In Sapp, the defendant argued, on appeal, that the trial court improperly instructed the jury on the charge of aiding and abetting because it failed to instruct the jury that defendant was acting with the culpability required in the principal offense of robbery. Id. at 6.
 {¶ 77} The Tenth District Court of Appeals rejected this argument and stated:
 {¶ 78} "* * * [T]he trial court jury instruction with regard to aider and abettor did not create a presumption of guilt absent a culpable mental state to commit the principal charged offense of robbery. The trial court's instruction to the jury provided that a defendant must knowingly aid or assist another in the commission of the principal offense. Robbery, as defined in R.C.2911.02 contemplates the same precisely stated degree of defendant's culpability — that of `knowingly.' The court defined knowingly and then used this term in delineating the elements of both robbery and complicity. Telling a jury that a defendant must knowingly assist `to commit a crime' sufficiently explains that the defendant must act with the same culpability as the principal. State v. Samuel (May 9, 1991), Cuyahoga App. No. 58464." Id.
 {¶ 79} We find the jury instruction, in the case sub judice, did not deny appellant due process of law. The trial court explained that before appellant could be found guilty of either kidnapping or aiding or abetting it had to be determined that appellant, beyond a reasonable doubt, aided or abetted another who did by force or threat remove the relevant victim, Anna Adkins in the first charge, and Ashley Gaines in the second charge, from the place where she was found, or restrained her of her liberty for the purpose of engaging in sexual activity with her against her will.
 {¶ 80} The trial court also defined "aided or abetted" as supported, assisted, encouraged, cooperated with, advised or incited. Finally, the trial court explained, to the jury, that they could not convict appellant of aiding or abetting unless the underlying crime, kidnapping, was actually committed and the trial court provided the definition of kidnapping.
 {¶ 81} In addition, the record indicates defense counsel failed to object to the instructions before the jury retired to deliberate. Crim.R. 30 provides, in pertinent part:
 {¶ 82} "(A) Instructions; error; record
 {¶ 83} "* * *
 {¶ 84} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * *"
 {¶ 85} Errors not brought to the trial court's attention are waived unless such errors rise to the level of plain error. Although we find no error in the trial court's instruction, even if we did find error, the overwhelming evidence of appellant's guilt renders any error harmless and not plain.
 {¶ 86} Appellant's Fifth Assignment of Error is overruled.
 VI {¶ 87} In his Sixth Assignment of Error, appellant claims he was denied effective assistance of counsel. We disagree.
 {¶ 88} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 89} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 90} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter
(1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell
(1993), 506 U.S. 364, 370.
 {¶ 91} Further, both the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland
at 697. It is based upon this standard that we review appellant's seventeen arguments in support of his Sixth Assignment of Error.
1. Defense Counsel's Closing Argument Virtually ConcededGuilt
 {¶ 92} Appellant claims defense counsel was ineffective because closing argument lacked any advocacy on his behalf and defense counsel did not counter the state's argument that the case had been proven beyond a reasonable doubt. We have reviewed the comments made by defense counsel and conclude counsel did not concede guilt.
 {¶ 93} Defense counsel made the following comments to the jury: (1) what the prosecutor stated was not evidence and the jury had to decide the evidence, (Tr. Vol. V at 990); (2) appellant had the presumption of innocence and proof of his guilt had to be established beyond a reasonable doubt, (Tr. Vol. V at 991); (3) the jury had to determine the accuracy of the testimony as well as the accuracy of the scientific and forensic evidence (Tr. Vol. V at 991-992); and (4) urged the jury to weigh and evaluate the evidence and arrive at a fair and just verdict (Tr. Vol. V at 993).
 {¶ 94} Appellant also maintains that defense counsel should have informed the jury that he had consensual sex with the victims. We have reviewed defense counsel's closing argument. The above comments do not indicate defense counsel conceded appellant's guilt. By the time defense counsel made his closing argument, the jury had heard appellant admit to beating the victims and dropping them off naked on the street. The jury had also heard evidence that appellant raped the victims, although appellant claims the sexual contact was consensual.
 {¶ 95} We conclude defense counsel's comments, during closing argument, were sound trial strategy based upon the evidence presented to the jury.
2. Defense Counsel Failed to Make an Opening Statement
 {¶ 96} Appellant alleges defense counsel was ineffective for failing to make an opening statement. In State v. Warner (Nov. 8, 1999), Delaware App. No. 98 CA 22A, at 3, we cited an Ohio Supreme Court decision, State v. Keith, 79 Ohio St.3d 514, 537,1997-Ohio-367, and held that the failure to make an opening and closing statement will not result in ineffectiveness per se. Further, appellant has not established how defense counsel's failure to make an opening statement denied him effective assistance of counsel.
 {¶ 97} 3. Defense Counsel Failed to Make a Motion forAcquittal
 {¶ 98} Appellant contends defense counsel was ineffective because he failed to make a motion for judgment of acquittal. Crim.R. 29(A) provides:
 {¶ 99} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 100} In State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, the Ohio Supreme Court held:
 {¶ 101} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 102} A motion for acquittal is properly denied if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988),51 Ohio App.3d 215, paragraph one of the syllabus. In the case sub judice, we conclude, given the evidence, there was sufficient evidence as to each element of the offenses and a motion for acquittal, at the close of the state's case, would have served no purpose. Thus, appellant was not prejudiced by defense counsel's failure to make a meritless motion.
4. Defense Counsel Failed to File a Motion to Suppress
 {¶ 103} Appellant maintains defense counsel was ineffective because he did not file a motion to suppress the warrantless search of his motel room, warrantless interception of telephone calls and warrantless seizure of papers from his jail cell. As to the motel room, appellant claims he was entitled to the same protections while occupying a motel room as a home and therefore, a warrant was required to arrest him.
 {¶ 104} According to the testimony of Detective Mack of the Richland County Sheriff's Department, appellant was not arrested inside the motel room. Instead, appellant exited the room and was arrested outside. Tr. Vol. II at 547. Because appellant was arrested outside the motel room, we find no Fourth Amendment violation.
 {¶ 105} Appellant next claims telephone calls were improperly intercepted without a warrant and without his consent. Appellant cites two portions of the transcript (Tr. 706-204) in support of this argument. We have reviewed the pages of the transcript and neither page concerns intercepted telephone calls. Having failed to reference the place in the record where the alleged error is reflected, as required by App.R. 16(A)(3), we will not address this issue.
 {¶ 106} Finally, appellant maintains defense counsel should have filed a motion to suppress the warrantless seizure of papers from his jail cell. In Hudson v. Palmer (1984), 468 U.S. 517, the United States Supreme Court held that "the Fourth Amendment has no applicability in a prison cell." Id. at 536. The Court explained that "[w]e are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that `[l]oss of freedom of choice and privacy are inherent incidents of confinement." Id. at 528, quoting Bell v. Wolfish (1979),441 U.S. 520, 537.
 {¶ 107} Thus, because the evidence was not illegally obtained, appellant was not prejudiced by defense counsel's failure to file a motion to suppress. See State v. Gibson
(1980), 69 Ohio App.2d 91, paragraph two of the syllabus.
5. Defense Counsel Failed to File a Motion to Dismiss BasedUpon Speedy Trial Grounds
 {¶ 108} Appellant claims he received ineffective assistance of counsel because defense counsel should have filed a motion to dismiss based upon speedy trial grounds. We recently addressed this issue in State v. Vance, Richland App. Nos. 2003CA0041, 2003CA0030, 2004-Ohio-258, and held that where the record is not properly developed on the issue of denial of a defendant's right to a speedy trial, the proper mechanism to develop the record would be for the defendant to file a postconviction relief petition alleging ineffective assistance of counsel for failing to file a motion to dismiss for speedy trial time. Id. at ¶ 46. A petition for postconviction relief would allow both parties to demonstrate whether or not any time was tolled under the statute. Id.
6. Defense Counsel Failed to Request an Instruction onConsent
 {¶ 109} Appellant contends defense counsel was ineffective because he failed to request an instruction on consent. At trial, appellant testified that any sexual conduct with the victims was consensual. In State v. Gilliam (Sept. 30, 1999), Montgomery App. No. 17491, the Second District Court of Appeals held that consent is not an affirmative defense to a charge of rape. R.C.2901.05(C) defines an "affirmative defense" as "(1) [a] defense expressly designated as affirmative" or "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."
 {¶ 110} The rape statute does not designate consent as an affirmative defense. Therefore, if consent is an affirmative defense, it must fall within the second definition provided in R.C. 2901.05(C). The court of appeals, in Gilliam, concluded it did not fall within the second definition. The court explained:
 {¶ 111} "The burden of proving an affirmative defense rests with the party asserting the defense. * * * Were Gilliam's [defendant's] argument successful, the burden of proving consent would rest with the defendant in a rape case, whereas at present the defendant has no such burden. Instead, the burden of showing force or threat of force, which can also be called `nonconsent,' is with the State. Placing opposing burdens on the defendant and State to prove consent and nonconsent, respectively, would also be nonsensical since one precludes the other." Id. at 7.
 {¶ 112} Thus, we conclude appellant was not entitled to an instruction on the affirmative defense of consent and therefore, was not prejudiced by defense counsel's failure to request such instruction.
7. Defense Counsel Failed to Object to Jurors Being Excusedfor Cause
 {¶ 113} Appellant contends defense counsel was ineffective because he failed to object to the dismissal of three prospective jurors for cause. As noted in appellant's Second Assignment of Error, each prospective juror dismissed for cause indicated he or she could not be fair and impartial for various reasons. Clearly, it would not have been to appellant's benefit to have these prospective jurors serve on the jury. Accordingly, as part of trial tactics, defense counsel did not object to the dismissal of these prospective jurors. Appellant was not prejudiced by defense counsel's failure to object to the dismissal of these three prospective jurors.
8. Defense Counsel's Cross-Examination of Witnesses Enhancedthe State's Version of the Facts
 {¶ 114} Appellant claims defense counsel made no attempt, during cross-examination, to challenge or impeach the testimony of the state's witnesses. In support of this argument, appellant maintains defense counsel merely repeated the direct examination of Detective Mayer and made no attempt to impeach his testimony. Appellant cites Vol. IV at 816-824 in support of this argument.
 {¶ 115} We have reviewed this portion of Detective Mayer's testimony and do not find the questions asked prejudiced appellant. Most of the questioning concerned the driving Detective Mayer did in order to determine time and distance while these offenses were being committed.
 {¶ 116} Next, appellant maintains defense counsel enhanced Adkins' credibility by asking, on cross-examination, for her to repeat the narrative which stated how the events occurred. Appellant refers to Vol. II at 412-414 in support of this argument. However, a review of the transcript indicates the testimony of Deborah Nashburn, an RN at Samaritan Hospital, is contained on these pages. Accordingly, we will not consider this argument as appellant failed to comply with App.R. 16(A)(3).
 {¶ 117} Finally, appellant contends defense counsel should have objected to the recitation of facts as given to JoAnne Smalley by Gaines. Appellant cites Vol. II at 439-441 and argues this testimony was hearsay. JoAnne Smalley testified that she is a SANE Nurse, which is a sexual assault nurse examiner. Tr. Vol. II at 435. Gaines told Smalley, about the assault, as part of Smalley's examination of her.
 {¶ 118} As such, we find JoAnne Smalley's testimony, about Gaines' version of the assault, was properly admitted into evidence and did not constitute hearsay under Evid.R. 803(4). This rule provides that statements made, for the purposes of medical diagnosis or treatment, are exceptions to the general prohibition against the admissibility of hearsay. The rule specifically states:
 {¶ 119} "(4) Statements for purposes of medical diagnosis ortreatment
 {¶ 120} "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 121} In State v. Hicks (Aug. 16, 1991), Lucas App. No. L-83-074, the Sixth District Court of Appeals reached the same conclusion on similar facts. In finding a doctor's and nurse's testimony about what a victim told them about a sexual battery admissible under Evid.R. 803(4), the court stated:
 {¶ 122} "During the course of the examination, the physician and Nurse Frederick asked questions of the victim (i.e. whether the victim was vaginally, anally or orally raped) in order to obtain the appropriate evidence for the rape kit. We find that it is to be expected that during the course of an examination for purposes of medical diagnosis or treatment, of an allegedly sexually abused patient, a physician or nurse will elicit statements from the patient. The fact that such statements will also be used by the physician or nurse to obtain the appropriate evidence for a rape kit does not render such statements inadmissible." Id. at 5.
 {¶ 123} Based upon the above, we do not find defense counsel's cross-examination of these witnesses enhanced the state's version of the facts. Thus, appellant was not prejudiced by defense counsel's cross-examination.
9. Defense Counsel Failed to Object to Opinion Testimony byWitnesses
 {¶ 124} Appellant challenges defense counsel's failure to object to the testimony of Deborah Nashburn and JoAnne Smalley. Appellant argues that Deborah Nashburn vouched for Adkins' credibility when she testified that her medical findings and Adkins' narrative of what occurred, during the sexual assault, were consistent. See Tr. Vol. II at 433. We disagree with this conclusion. Deborah Nashburn did not testify that Adkins was credible or truthful. Nashburn merely testified that Adkins' statement to her was consistent with her medical findings.
 {¶ 125} Appellant also claims defense counsel should have objected to the recitation of facts given to JoAnne Smalley by Gaines. In support of this argument, appellant cites Vol. II at 439-441. However, these pages of the transcript contain the testimony of Deborah Nashburn. We previously determined that Nashburn's testimony was admissible under Evid.R. 803(4), an exception to the hearsay rule. Appellant was not prejudiced by defense counsel's failure to object to the admission of this testimony by the witnesses.
10. Defense Counsel Failed to Object to Opinions on Truth orVeracity
 {¶ 126} Appellant claims defense counsel was ineffective because he failed to object to Detective Mayer's opinion regarding the truth and veracity of the victims' testimony. As with the testimony of Deborah Nashburn and JoAnne Smalley, we conclude the testimony of Detective Mayer did not vouch for the truth or veracity of the victims in this case. Instead, Detective Mayer merely indicated the victims' testimony presented, in court, was consistent with their prior statements. Appellant was not prejudiced by defense counsel's failure to object to this testimony.
11. Defense Counsel Failed to Request a Lesser Instruction onAssault and Gross Sexual Imposition
 {¶ 127} Appellant contends defense counsel should have requested a lesser instruction on assault and gross sexual imposition. Appellant claims disputed evidence was presented, at trial, concerning whether Gaines suffered serious physical harm, i.e. a broken nose, instead of merely physical harm, i.e. a deviated septum.
 {¶ 128} A trial court is required to instruct on a lesser included offense "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas
(1988), 40 Ohio St.3d 213, paragraph two of the syllabus. In the case sub judice, the record supports the conclusion that appellant would not be entitled to an acquittal on the charges of felonious assault and rape.
 {¶ 129} First, appellant admitted to assaulting the victims. Tr. Vol.V at 910-914. Second, an instruction on gross sexual imposition was not required because appellant did not admit to any touching of the victims. Instead, appellant's trial strategy was to avoid the rape conviction by denying penetration and touching. Appellant also testified that any sexual contact was consensual. Finally, as to the charge of felonious assault, Dr. Phillip Cover testified that Gaines suffered a fractured nose. Tr. Vol. II at 521. Therefore, appellant was not prejudiced by defense counsel's failure to request a lesser instruction on assault and gross sexual imposition.
12. Defense Counsel Failed to Object to Experimental Evidence
 {¶ 130} Appellant maintains defense counsel should have objected to Detective Mayer's testimony regarding the time and distances it took him to drive from Ashland County to locations in Mansfield. Appellant argues this testimony was improperly admitted as experimental evidence.
 {¶ 131} The admission or exclusion of experimental evidence is left to the sound discretion of the trial court. Vogel v.Wells (1991), 57 Ohio St.3d 91, 95. "For an experiment to be admissible, it must be shown that: `(1) the experiment is relevant, (2) the experiment is conducted under substantially similar conditions as those of the actual occurrence, and (3) the evidence of the experiment does not consume undue time, confuse the issues, or mislead the jury.' * * * Conditions need only be substantially similar, rather than identical, for experimental evidence to be admissible. * * * The determination as to whether the conditions of the actual event and the experiment are dissimilar, and the significance of any dissimilarities, is also left to the discretion of the trial court." [Citations omitted.]State v. Marks (June 13, 2001), Monroe App. No. 823, at 2.
 {¶ 132} We conclude the trial court did not abuse its discretion when it admitted Detective Mayer's testimony and therefore, appellant was not prejudiced by defense counsel's failure to object to the admission of this testimony. The testimony regarding time and distance was relevant, conducted under substantially similar conditions and such evidence did not consume undue time, confuse the issues or mislead the jury. Appellant was not prejudiced by defense counsel's failure to object to the admission of this testimony.
13. Defense Counsel Failed to Examine Evidence or Conduct anInvestigation
 {¶ 133} Appellant contends defense counsel was ineffective because he failed to examine evidence or conduct an investigation. Appellant makes two claims in support of this argument. First, appellant argues defense counsel never viewed the videos played at trial and thereafter, asked the witnesses their opinion as to what was shown on the videos. In support of this argument, appellant cites two portions of the transcript. See Vol. I at 173-174, Vol. V at 971. Appellant claims defense counsel asked the witnesses their opinions as to what was shown on the videos.
 {¶ 134} We have reviewed the portions of the transcript cited by appellant and find the citation to Vol. V at 971 concerns the admission of a videotaped deposition and therefore, does not support appellant's argument. Further, the citation to Vol. I at 173-174 merely references Adkins' comments regarding a videotape of her vehicle and the vehicle where the sexual assault occurred. We do not find appellant was prejudiced by defense counsel's failure to object to this testimony.
 {¶ 135} Appellant also claims defense counsel was ineffective for failing to pursue a statement that was allegedly not provided to him by the prosecutor. The record indicates the state's log reflects the statements at issue were provided to defense counsel and defense counsel responded, on the record, that he would look for the statements again in his records. Vol. IV at 809-810.
 {¶ 136} Further, the transcript also indicates the prosecutor stated he would provide the statements, to defense counsel, for purposes of review, if defense counsel could not find them in his records. No further mention is made regarding these statements. Thus, we conclude defense counsel had an opportunity to review them.
14. Defense Counsel Failed to Say Anything at Sentencing
 {¶ 137} Appellant claims defense counsel was ineffective because he failed to make a statement, on his behalf, at sentencing. Although we would agree, generally, it is better practice for defense counsel to make a statement on behalf of his or her client, appellant has not established that he was prejudiced by defense counsel's failure to do so. This is supported by the fact that appellant received a forty-year prison term instead of a possible eighty-six-year prison term. Therefore, appellant was not prejudiced by defense counsel's failure to make a statement at appellant's sentencing.
15. Defense Counsel Did Not Object to Irrelevant Evidence
 {¶ 138} Appellant contends defense counsel should have objected to the admission of evidence that he was arrested, outside a motel room, rented by Christopher Chinn, on the basis that it was irrelevant. Appellant argues the evidence implied that he was dangerous. In support of this argument, appellant cites State v. Brooks, 75 Ohio St.3d 148, 151-152,1996-Ohio-134, for the proposition that an arrest is irrelevant and probative of nothing.
 {¶ 139} We have reviewed the Brooks case and find it does not support appellant's argument. Further, upon review of all the evidence presented by the state, we conclude evidence of appellant's arrest was only marginally indicative of his dangerousness in comparison to the other evidence presented during the course of the trial. Thus, we conclude appellant was not prejudiced by defense counsel's failure to object to the introduction of evidence concerning his arrest.
16. Defense Counsel Failed to Object to Irrelevant andInflammatory Evidence
 {¶ 140} Appellant maintains defense counsel was ineffective because he failed to object to irrelevant and inflammatory evidence. In support of this argument, appellant cites the testimony of the following four witnesses: Dr. Marion Demers, Deborah Nashburn, Tommy Thiesen and Detective Robert Mack. Appellant fails to give any explanation why he believes this testimony to be irrelevant and inflammatory. Further, we have already determined that Deborah Nashburn's testimony was admissible under Evid.R. 803(4). We have reviewed the testimony cited by appellant and conclude appellant was not prejudiced by defense counsel's failure to object to it.
17. Defense Counsel Agreed to an Amendment of the Indictment
 {¶ 141} Appellant contends defense counsel was ineffective because he agreed to the prosecutor's request to amend the indictment. Appellant claims the amendment made it easier for the state to prove its case. We have reviewed the portion of the transcript cited by appellant. The transcript indicates the indictment was not amended. Rather, the jury instructions were amended for purposes of clarification. Tr. Vol. V at 973-974.
 {¶ 142} Based upon our review of the arguments set forth above, we conclude appellant was not prejudiced by defense counsel's performance. As such, appellant cannot establish a claim for ineffective assistance of counsel.
 {¶ 143} Appellant's Sixth Assignment of Error is overruled.
 VII {¶ 144} In his Seventh Assignment of Error, appellant contends he was denied due process of law when he was convicted of tampering with evidence. We disagree.
 {¶ 145} Appellant claims the act of throwing clothes out of the vehicle and damaging a vehicle's window are insufficient acts to establish the crime of tampering with evidence. R.C. 2921.12
defines tampering with evidence as follows:
 {¶ 146} "(A) No person knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 {¶ 147} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
 {¶ 148} "(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation. * * *"
 {¶ 149} Appellant argues that R.C. 2921.12 does not apply to the charged conduct and further, there was no actual pending investigation under way in order to constitute a violation. Finally, appellant claims the indictment was insufficient to charge him with tampering with evidence and he did not receive proper notice of the offense.
 {¶ 150} Defense counsel did not raise any objection concerning the charge of tampering with evidence. Therefore, we must review his arguments under a plain error analysis. The indictment charged appellant with a violation of R.C.2921.12(A)(1). Clearly, the evidence established at trial that appellant threw the victims' clothing from the vehicle in order to destroy and conceal its availability as evidence in a criminal proceeding. Likewise, appellant moved the victim's vehicle in order to conceal his involvement in the crimes. Thus, we conclude R.C. 2921.12(A)(1) does apply to the charged conduct.
 {¶ 151} Although an investigation was not in progress when appellant committed the crime of tampering with evidence, appellant knew an investigation was likely to be instituted due to his sexual assault of the two victims and it was this knowledge that prompted appellant to tamper with the evidence. Finally, we have reviewed Count VII of the indictment, which charges appellant with tampering with evidence. The count clearly identifies the section of the statute under which appellant was charged. If appellant needed more specific information concerning this count of the indictment, he could have requested such by filing a bill of particulars.
 {¶ 152} Accordingly, we do not find appellant's substantial rights were affected thereby rising to the level of plain error.
 {¶ 153} Appellant's Seventh Assignment of Error is overruled.
 VIII, IX, X {¶ 154} In his Eight, Ninth and Tenth Assignments of Error, appellant maintains he was denied due process of law when he was convicted of bribery, kidnapping and rape because the state presented insufficient evidence to prove the elements of the charged offenses beyond a reasonable doubt. We disagree.
 {¶ 155} We will not review the merits of these assignments of error as appellant failed to file a motion for acquittal pursuant to Crim.R. 29 and therefore, did not preserve these issues for appeal. See State v. Roe (1989), 41 Ohio St.3d 18, 25.
 {¶ 156} Appellant's Eighth, Ninth and Tenth Assignments of Error are overruled.
 XI {¶ 157} Appellant maintains, in his Eleventh Assignment of Error, that he was denied due process of law and subjected to multiple punishments when the trial court failed to merge various offenses. We disagree.
 {¶ 158} Specifically, appellant argues the kidnapping and rape counts constitute two or more allied offenses of similar import which should have been merged. Therefore, as a result of the trial court's failure to merge these offenses, he was subjected to multiple punishments in violation of the Fifth Amendment. This court previously addressed this issue in Statev. Driver (Oct. 23, 2000), Stark App. No. 1999CA00290, at 7, and stated:
 {¶ 159} "Recently, the Ohio Supreme Court has clarified the test to be applied when reviewing claims involving allied offenses of similar import. Under the analysis of State v.Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, a reviewing court is to compare the elements of the offenses in the abstract. If the elements correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639 (citingState v. Jones (1997), 78 Ohio St.3d 12, 14, 676 N.E.2d 80). This issue is whether `the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other."' If the elements do not so correspond, the crimes are not allied offenses of similar import. * * * As charged in the indictment, rape, pursuant to R.C. 2907.02, required proof that appellant engaged in sexual conduct with the victim having purposely compelled the victim to submit by force or threat of force. Kidnaping, (sic) under R.C. 2905.01, required proof that appellant did, by force, threat or deception, remove the victim from the place where she was found or did restrain the victim from her liberty, with purpose to facilitate the commission of a felony or flight thereafter, and/or terrorize or inflict serious physical harm on the victim and/or engage in sexual activity, as defined by R.C. 2907.01, with the victim against her will. By comparing the elements of rape, one can see that the crime of kidnaping (sic) can be committed without committing the offense of rape, and vice verse. Each contains at least one element not contained in the other. Therefore, we find that the offenses are not allied offenses."
 {¶ 160} Based upon our previous decision in Driver, we conclude appellant's Fifth Amendment rights were not violated because the crimes of rape and kidnapping do not constitute two or more offenses of similar import.
 {¶ 161} Appellant's Eleventh Assignment of Error is overruled.
 XII {¶ 162} In his Twelfth Assignment of Error, appellant claims he was denied due process of law when the trial court sentenced him to a forty-year term of imprisonment. We disagree.
 {¶ 163} Appellant essentially challenges the imposition of consecutive sentences which exceeded the maximum sentence of ten years. In State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, the Ohio Supreme Court discussed consecutive sentences and stated:
 {¶ 164} "A court may not impose consecutive sentences for multiple offenses unless it `finds' three statutory factors. R.C.2929.14(E)(4). First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. * * * Second, the court must find
that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. * * * Third, the court must find
the existence of one of the enumerated circumstances in R.C.2929.14(E)(4)(a) through (c)." (Emphasis sic.) Id. at ¶ 13.
 {¶ 165} The factors contained in R.C. 2929.14(E)(4)(a) through (c) are as follows:
 {¶ 166} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 167} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 168} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 169} Thus, the Court concluded, in Comer, that "[p]ursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Comer at paragraph one of the syllabus.
 {¶ 170} We have reviewed the transcript of the sentencing in this matter. Concerning the required findings under R.C.2929.14(E)(4), the trial court stated:
 {¶ 171} "I would say, in addition, these are extremely brutal crimes. The harm caused was great and unusual because of the nature of the crimes and the multiplicity of the victims. And, consequently, nonconsecutive terms would not adequately reflect the seriousness of your conduct. In addition, your criminal history shows that consecutive terms are needed to protect the public." Tr. Sentencing Hrng., Apr. 3, 2003, at 1051.
 {¶ 172} The trial court then proceeded to consider the recidivism factors. We conclude the trial court complied with theComer decision in that it made the statutorily enumerated findings under R.C. 2929.14(E)(4). Although the trial court could have referred to additional evidence in the record to support the imposition of consecutive sentences, we find the trial court gave sufficient reasons to support its findings.
 {¶ 173} Appellant's Twelfth Assignment of Error is overruled.
 XIII {¶ 174} Appellant maintains, in his Thirteenth Assignment of Error, that he was denied due process of law when he was adjudicated a "sexual predator." We disagree.
 {¶ 175} In support of this assignment of error, appellant challenges the trial court's finding that he is likely to re-offend. R.C. 2950.01 defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." In State v.Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247, the Ohio Supreme Court addressed the need for the appointment of an expert witness in a sexual offender classification hearing. The Court held as follows:
 {¶ 176} "An expert witness shall be provided to an indigent defendant at an R.C. 2950.09(B)(1) sexual offender classification hearing if the court determines, within its sound discretion, that such services are reasonably necessary to determine whether the offender is likely to engage in the future in one or more sexually oriented offenses within the meaning of R.C.2950.01(E)." Id. at syllabus.
 {¶ 177} At the hearing, the trial court stated as follows:
 {¶ 178} "I would note a number of the factors are present to note that you are a sexual predator. Your prior criminal record is terrible. The age of the victim. One of these was a minor, age 17. The offense involved multiple victims. You used alcohol to impair the victims and prevent resistance. The nature of the act at this time was part of a calculated pattern of abuse. You used cruelty and threatened death. And I consequently find by clear and convincing evidence that you are likely to commit a sexually oriented offense in the future if you were given the opportunity." Tr. Sentencing Hrng., Apr. 3, 2003, at 1057.
 {¶ 179} Based upon the above comments, it is clear the trial court did not believe it was necessary to provide appellant with an expert witness in order to determine whether he was likely to engage in the future in sexually oriented offenses. The evidence presented at trial and the statutory factors the trial court was required to consider support the trial court's conclusion that appellant is likely to re-offend. The trial court did not abuse its discretion.
 {¶ 180} Appellant's Thirteenth Assignment of Error is overruled.
 {¶ 181} For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
Wise, J. and Gwin, P.J., concur.
Edwards, J., concurs in part and dissents in part.
[1] The citation to "Tr." is a cite to a volume of the transcript that is not numbered. All other volumes of the transcript are numbered and are indicated accordingly.