OPINION *Page 2 
{¶ 1} Appellant Robert Lee Eismon appeals his conviction and sentence in the Fairfield County Court of Common Pleas for gross sexual imposition and kidnapping, as well as his classification as a child-victim predator.
 {¶ 2} On the afternoon of July 3, 2005, the Eismon family had a cookout at the home of appellant and his wife, Wilma, in Carroll, Ohio. Appellant's daughter-in-law, Amanda, son, Chad, and their children were present along with numerous other family members.
 {¶ 3} Amanda and Chad lived with appellant and his wife along with their children, Noah (3), Abigail (2), and Brent (infant). The house was crowded and appellant often spent time alone in a garage which had two heavy doors which stuck and were difficult to move.
 {¶ 4} On that July 3rd afternoon, Amanda went into the house to bath her infant son and asked other family members to watch Abigail. At some point, Amanda noticed Abigail was no longer in the back yard. Amanda began searching for her daughter. When Amanda approached the garage, she heard whimpering followed by a scream. T. at 85-86. Amanda approached the garage and "jerked the garage door open real hard." T. at 86. Amanda observed the appellant with his pants down to his knees leaning over Abigail, who was naked, lying on a mattress in the middle of the garage. T. at 87-88. Appellant's hand was on Abigail's vagina. T. at 90. Appellant stood up and stated "please don't tell anybody." T. at 92.
 {¶ 5} Amanda went back into the house and told Chad to get Abigail. Amanda called 9-1-1. Chad went out to the garage and observed appellant with his belt hanging *Page 3 
halfway down. T. at 308. Chad asked appellant what had happened and appellant stated, "I'm sorry. I was laying on top of Abby naked." T. at 309.
 {¶ 6} Chad brought Abigail to her mother and they waited for the police arrive. Deputy Hamler and Deputy Brown of the Fairfield County Sheriff's Office arrived at the scene along with an ambulance. Abigail was transported to Children's Hospital for evaluation. Detective Scott Jones arrived at the scene and began collecting evidence. Deputy Hamler asked appellant to write a statement:
 {¶ 7} "I was in the garage my granddaughter was in there with me. I took off he [sic] pants took mine off and I laid on top of her. I did not do anything else. I am known [sic] at this time my rights."
 {¶ 8} Detective Jones then transported appellant to the Fairfield County Jail to interview him. Detective Jones read appellant his Miranda Rights.
 {¶ 9} At approximately 8:00 pm, Dr. Wendy Stevens examined Abigail in the Emergency Department of Children's Hospital. Dr. Stevens reported an abnormal genital exam. T. at 189. This type of abnormality would not be caused by consensual contact. T. at 191. Dr. Stevens opined that this injury occurred from an act of abuse prior to July 3, 2006. T. at 200. Dr. Stevens then referred Abigail to the Children's Advocacy Center for further examination due to the suspected sexual abuse.
 {¶ 10} On July 6, 2005, Gail Horner, a nurse practitioner with the Center for Child and Family Advocacy at Columbus Children's Hospital examined Abigail. She concurred with the observations and opinion of Dr. Stevens. *Page 4 
 {¶ 11} On July 8, 2005, the Fairfield County Grand Jury indicted appellant of one count of rape, one count of gross sexual imposition, four counts of kidnapping, and one count of abduction.
 {¶ 12} On July 12, 2005, appellant entered pleas of not guilty or in the alternative not guilty by reason of insanity. Appellant did not present a defense of legal insanity at any time during the presentation of evidence.
 {¶ 13} On January 24 and 25, 2006, a trial to the court was held. After the presentation of evidence and arguments of counsel, appellant was found guilty of one count of gross sexual imposition, four counts of kidnapping and one count of abduction. The trial court found that for sentencing purposes the multiple counts of kidnapping and the count of abduction merged into one offense of kidnapping.
 {¶ 14} On March 6, 2006, the sentencing and sexual offender classification hearing was held. After the presentation of evidence and arguments of counsel, the trial court classified the appellant as a child-victim predator. The trial court imposed a sentence of five years on the gross sexual imposition charge and ten years on the kidnapping charge, for an aggregate sentence of 15 years.
 {¶ 15} On March 17, 2006, the trial court issued a Judgment Entry memorializing this sentence.
 {¶ 16} On March 20, 2006, appellant filed a Notice of Appeal raising the following assignments of error:
 {¶ 17} "I. DEFENDANT'S CONVICTIONS FOR KIDNAPPING AND ABDUCTION WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 5 
 {¶ 18} "II. THE TRIAL COURT ERRED IN FAILING TO MERGE FOR SENTENCING PURPOSES THE OFFENSE OF KIDNAPPING INTO THE OFFENSE OF GROSS SEXUAL IMPOSITION.
 {¶ 19} "III. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT WAS A CHILD-VICTIM PREDATOR."
 I. {¶ 20} In his first assignment of error, appellant maintains there is not sufficient evidence to sustain his convictions on four counts of kidnapping and one count of abduction.
 {¶ 21} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 22} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 23} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment *Page 6 
must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 24} Revised Code § 2905.01 outlines the offense of kidnapping:
 {¶ 25} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 26} "(1) To hold for ransom, or as a shield or hostage;
 {¶ 27} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 28} "(3) To terrorize, or to inflict serious physical harm on the victim or another;
 {¶ 29} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will;
 {¶ 30} "(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.
 {¶ 31} "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious *Page 7 
physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 32} "(1) Remove another from the place where the other person is found;
 {¶ 33} "(2) Restrain another of his liberty;
 {¶ 34} "(3) Hold another in a condition of involuntary servitude.
 {¶ 35} "(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree."
 {¶ 36} Revised Code § 2905.02 outlines the offense of abduction:
 {¶ 37} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 38} "(1) By force or threat, remove another from the place where the other person is found;
 {¶ 39} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear;
 {¶ 40} "(3) Hold another in a condition of involuntary servitude.
 {¶ 41} "(B) Whoever violates this section is guilty of abduction, a felony of the third degree.
 {¶ 42} Specifically, appellant argues that there is no evidence of how Abigail ended up in the garage. Appellee correctly points out that it is unnecessary to show how Abigail went to the garage but that she was kept there by appellant. *Page 8 
 {¶ 43} In State v. Powell (1990), 49 Ohio St.3d 255, 552 N.E.2d 191, the Ohio Supreme Court, quoting the Legislative Service Commission Comment to R.C. § 2905.01, stated that for a child under the age of thirteen "it makes no difference whether the child* * *voluntarily accompanies the kidnapper or submits to the restraint." "Merely by keeping her with him, he restrained her, whether he used physical force or not." Id. at 263.
 {¶ 44} The evidence before the trial court was that Abigail was two-years-old at the time of the incident. T. at 80. Appellant was her grandfather and she often followed him. In essence, Abigail trusted appellant. T. at 107. Further, appellant himself stated Abigail probably thought he was going to change her diaper. T. at 148. Appellant laid on Abigail. T. at 148. He weighed approximately 250 pounds. T at 91. Further, the door to the garage was large and Abigail could not have opened the door by herself. T. at 93.
 {¶ 45} This testimony was sufficient to support appellant's conviction for kidnapping and abduction. Abigail was upset and crying when discovered by her mother. Abigail would not have been able remove appellant from her person. She would not have been able to open the heavy garage door. She likely relied upon appellant for her personal care needs, such as changing her diaper, and trusted appellant to do so. Appellant took this position trust and used it to sexually abuse his two-year-old granddaughter.
 {¶ 46} Accordingly, we find the trial court's findings were not against the manifest weight of the evidence.
 {¶ 47} Appellant's first assignment of error is overruled. *Page 9 
 II. {¶ 48} In appellant's second assignment of error, he argues that the trial court should have merged the offense of kidnapping into the offense of gross sexual imposition for the purposes of sentencing since there was not a separate animus to each offense.
 {¶ 49} Revised Code § 2941.25, Multiple counts states:
 {¶ 50} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 51} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 52} This Court previously addressed this issue in State v.Driver (Oct. 23, 2000), Stark App. No. 1999CA00290, 2000 WL 1591086 at7, and stated as follows:
 {¶ 53} "Recently, the Ohio Supreme Court has clarified the test to be applied when reviewing claims involving allied offenses of similar import. Under the analysis of State v. Rance (1999), 85 Ohio St.3d 632,710 N.E.2d 699, a reviewing court is to compare the elements of the offenses in the abstract. If the elements correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639, 710 N.E.2d 699 (citing State v. Jones (1997), 78 Ohio St.3d 12,14, 676 N.E.2d 80). *Page 10 
 {¶ 54} "The issue is whether `the elements of the crimes' correspond to such a degree that the commission of one crime will result in the commission of the other. If the elements do not so correspond, the crimes are not allied offenses of similar import." Id.
 {¶ 55} Gross sexual imposition, pursuant to R.C. 2907.05, requires proof that appellant engaged in sexual contact with the victim having purposely compelled the victim to submit by force or threat of force. Kidnapping under R.C. 2905.01, required proof that appellant did, by force, threat or deception, remove the victim from the place where she was found or did restrain the victim from her liberty, with purpose to facilitate the commission of a felony or flight thereafter, and/or terrorize or inflict serious physical harm on the victim and/or engage in sexual activity, as defined by R.C. 2907.01, with the victim against her will. By comparing the elements of gross sexual imposition, one can see that the crime of kidnapping can be committed without committing the offense of gross sexual imposition, and vice verse. Each contains at least one element not contained in the other. Therefore, we find that the offenses are not allied offenses. See also State v. Keeton, Richland App. No 03CA43, 2004-Ohio-3676 in which this Court citedDriver, supra, in holding that kidnapping and rape are not allied offenses of similar import.
 {¶ 56} We are cognizant of the fact that the Ohio Supreme Court recently, in State v. Adams, 103 Ohio St.3d 508, 526, 817 N.E.2d 29,2004-Ohio-5845, disregarded the Rance test and applied the test set forth in State v. Logan in holding that kidnapping and rape were not allied offenses of similar import. In State v. Logan (1979),60 Ohio St.2d 126, 397 N.E.2d 1345, which was decided before Rance, the Ohio Supreme Court had established guidelines to determine whether kidnapping and rape are committed *Page 11 
with a separate animus so as to permit separate punishment under R.C.2941.25(B). The Ohio Supreme Court, in Logan, held that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at paragraph (a) of the syllabus. The court, in Logan, recognized that where the asportation or restraint "subjects the victim to a substantial increase in risk of harm separate and apart from * * * the underlying crime, there exists a separate animus."Id. at paragraph (b) of the syllabus.
 {¶ 57} However, even applying the test set forth in Logan, we find that the trial court did not err in failing to merge the offenses of gross sexual imposition and kidnapping. We find that the gross sexual imposition and kidnapping were committed with a separate animus and that the kidnapping was not incidental to the gross sexual imposition. Appellant shut the heavy garage doors so Abigail could not leave. T. a 93. The trial court concluded Abigail could not open the door. T. at 373. Further, the garage was a secretive location. The family recognized this as appellant's private place. T. at 215, 323-324. Contrary to appellant's assertion, appellant's restraint of the victim was not incidental to committing the offense of gross sexual imposition.
 {¶ 58} Based on the foregoing, we find that the trial court did not err in failing to merge the offenses of rape and kidnapping.
 {¶ 59} Appellant's second assignment of error is overruled. *Page 12 
 III. {¶ 60} Appellant argues that he was improperly classified as a child-victim predator since he only had one victim and the psychologist found he was not likely to engage in sexual offenses in the future.
 {¶ 61} Ohio's sex-offender registration scheme provides for three classes of sex offenders: habitual sex offenders, sexual predators, and sexually oriented offenders. See R.C. 2950.09; see, also, State v.Williams, 88 Ohio St.3d 513, 518, 2000-Ohio 428, 728 N.E.2d 342, certiorari denied sub nom. Suffecool v. Ohio (2000), 531 U.S. 902, 121 S.Ct. 241, 148 L.Ed.2d 173.
 {¶ 62} In State v. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. Traditionally, the courts, including this one, have applied the standard set forth by the Ohio Supreme Court in C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578. In C.E. Morris, the Ohio Supreme Court announced the standard for reviewing civil judgments as against the weight of the evidence. The court held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at paragraph one of the syllabus. The civil standard has been applied to the trial court's determination that a particular offender is a sexual predator. See, e.g., State v. Tillery, Cuyahoga App. No. 79166, 2002-Ohio-1587; State v. Childs (2001),142 Ohio App.3d 389, 395, 755 N.E.2d 958; State v. Wilkerson (2000),138 Ohio App.3d 861, 742 N.E.2d 716; State v. Gerhardt, Clark App. No. 00CA0090, 2001-Ohio-1470; State v. Scott, Logan App. No. 8-2000-26, 2001-Ohio2107;State v. *Page 13 Hood, Washington App. No. 00CA51, 2001-Ohio-2620; State v. Cooper, Muskingum App. No. CT2001-0013, 2001-Ohio-1676; State v. Parsons (Aug. 17, 2001), Huron App. No. H-00-042. Thus "if there is competent, credible evidence to support the factual findings of the trial court, we review only whether, after weighing the evidence and resolving evidentiary conflicts and issues of credibility, the trial court properly applied the governing law to those factual findings". State v.Griggs, 12 Dist. No. CA2001-08-194, 2002-Ohio-4375 at ¶ 5. InSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." In the case at bar, we find that the trial court did properly apply the law to the factual findings.
 {¶ 63} A "sexual predator" is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E); State v. Eppinger (2001), 91 Ohio St.3d 158,163 2001-Ohio-247, 743 N.E.2d 881, 886. There must be clear and convincing evidence that the offender is a "sexual predator" before that predator classification may be applied. R.C. 2950.09(B)(4). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus. While clear and convincing evidence is "more than a mere preponderance" of the evidence, it is less *Page 14 
than that which constitutes "beyond a reasonable doubt." State v.Danby (1983), 11 Ohio App.3d 38, 41, 463 N.E.2d 47, citingCross, 161 Ohio St. at 477, 120 N.E.2d 118.
 {¶ 64} In making the sexual predator determination, the trial court is to examine the factors enumerated in R.C. 2950.09(B)(3), which include the following:
 {¶ 65} "(a) The offender's age;
 {¶ 66} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 67} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 68} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 69} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offenses or to prevent the victim from resisting;
 {¶ 70} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 71} "(g) Any mental illness or mental disability of the offender;
 {¶ 72} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; *Page 15 
 {¶ 73} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 74} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B)(3)."
 {¶ 75} In State v. Eppinger, supra, the Ohio Supreme Court set forth the requirements for conducting a sexual predator hearing. Of relevance to the case at bar, the Court noted: "[f]inally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism". See State v. Thompson, supra. See, also, State v.Russell (Apr. 8, 1999), Cuyahoga App. No. 73237, unreported,1999 WL 195657; State v. Casper (June 10, 1999), Cuyahoga App. Nos. 73061, 73064, 73062 and 73063, unreported, 1999 WL 380437". Id. at 166,743 N.E.2d at 889.
 {¶ 76} The trial court considered the factors above in the classification hearing. The trial court stated in relevant part:
 {¶ 77} "Also, the Defendant's size, physical size, as compared to the child would prevent the child from easily escaping."
 {¶ 78} "The Court also found at the time of the trial and finds again that the Defendant's comments to the Fairfield County Sheriff's Office employees, detectives investigating the case was: When asked why the child lay down on the mattress, his response was, `She probably thought I was going to change her diaper.'" *Page 16 
 {¶ 79} "The Court is also required — as to whether the Defendant displayed cruelty or made one or more threats of cruelty, the Court finds specifically that it is cruel for a grandparent — there was evidence presented at trial that the child screamed. The Court could hear the child in the background, as well, although the child was talking, but the Court could hear the child in the background of the 9-1-1 tape. The child was holding her genitalia, her private area."
 {¶ 80} "The Court finds that the child was hurt physically and psychologically; could not even begin to comprehend what had occurred."
 {¶ 81} "The Court is required to consider any additional behavioral characteristics that contributed to the Defendant's conduct. The Defendant has indicated that he's heard voices and is found by the Court at the time of the trial — and again, the Court believes this was in response to the Defendant's statement to law enforcement shortly after the incident occurred. When asked why he did this, he stated, "I wanted to see what it felt like." And he asked family members, specifically, his daughter-in-law, who found him on top of — on top or over the child, not to tell."
 {¶ 82} "The Court is going to incorporate in these findings as well the reports issued, again, by Dr. Hedges and Dr. Chapman."
 {¶ 83} "The Court is to apply a clear and convincing evidence standard. Clear and convincing evidence means — to be clear and convincing, the evidence must have more than simply a greater weight of the evidence opposed to it, which would be a preponderance of the evidence, and must produce in the Court's mind a firm belief or conviction about the facts to be proved or the truth of the matter." *Page 17 
 {¶ 84} "The Court, in applying that standard to those facts found by the Court for purposes of classification, finds that the Defendant is a child sexual predator — excuse me — a child victim predator." Transcript dated March 6, 2006 at pp. 36-38.
 {¶ 85} This Court recognizes that we are to show discretion to the trial court on the likelihood of recidivism. The record demonstrates the trial court properly considered the statutory factors set forth above. Although Dr. Hedges, a psychologist, indicates in his report that "[f]rom an actuarial risk perspective, Mr. Eismon is viewed as having a relatively low likelihood for committing additional sexual offenses in the future", Dr. Hedges also indicated the that Mr. Eismon's risk for future sexual offenses is "somewhat increased based on his lack of insight into why he engaged in this behavior and his continued externalization of blame on `voices' for his choice to engage in this activity. Further, Mr. Eismon has not yet engaged in treatment services to aid in reducing his probability for engaging in future sexually inappropriate behavior."
 {¶ 86} Considering all the factors presented in this case, including the tender age of the victim and that appellant took advantage of his position of trust as the victim's grandfather, we find the decision to classify appellant a sexual predator is supported by clear and convincing evidence and is not against the manifest weight of the evidence.
 {¶ 87} Appellant's third assignment of error is overruled. *Page 18 
 {¶ 88} The judgment of the Fairfield County Court of Common Pleas is affirmed.
By: Delaney, J. Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1