OPINION *Page 2 
{¶ 1} Defendant-appellant, Michael R. Davis, appeals from his conviction and sentence in the Licking County Court of Common Pleas on one count of Felonious Assault, a felony of the second degree, in violation of Ohio Revised Code Section 2903.11(A)(1), with a firearm specification in violation of R.C. 2941.145; one count of Escape, a felony of the second degree in violation of Ohio Revised Code Section 2921.34(A)(1); one count of Having Weapons While Under Disability, a felony of the third degree in violation of Ohio Revised Code Section 2923.13(A)(2); and one count of Unlawful Possession of a Dangerous Ordnance, a felony of the fifth degree in violation of Ohio Revised Code Section 2923.17(A). The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} The Court will rely substantially on the pertinent procedural facts as presented by the appellant in his Brief, which the State, as stated in its response, generally accepts.
 {¶ 3} On April 13, 2007, appellant was at the home of Christina Hartrum, where he sometimes resided, located in Licking County, Newark, Ohio. Present in the home were appellant, Christina Hartrum and Daniel Castle. On that day, Cathy Coleman came to visit Christina Hartrum from her home in Muskingum County, Ohio.
 {¶ 4} Upon entering the home, Ms. Coleman noticed that the appellant and Christina were having an intense argument. According to Ms. Coleman, Christina was visibly upset and crying. Upon stating that they were going to leave, appellant became upset. Ms. Coleman testified that appellant told Christina that she was not allowed to leave the house. He informed Ms. Coleman that she was "nothing but a fucking bitch." *Page 3 
He then told her to "get the fuck out of his house." (1T. at 138). As the women were attempting to leave the home, appellant retrieved a shotgun from underneath the couch. Appellant pointed the gun in Ms. Coleman's face and told her that he "was going to blow my fucking head off." (1T. at 141). Ms. Coleman ran to the front door; however, Christina, who has limited mobility, impeded her progress. While at the top of the porch steps, Ms. Coleman testified that she was pushed, "a full force slam into [her] back . . ." (1T. at 145). The push was with both hands. (Id.). She further testified that the appellant was right behind her as she was trying to get out of the door of the residence. (Id. at 144). After hitting the ground, Ms. Coleman looked back to see appellant "standing in the doorway." (Id. at 146).
 {¶ 5} As a result of the fall, Ms. Coleman sustained an injury to her left leg and ankle. The fall resulted in fifteen fractures to the bone. (Id. at 156). Ms. Coleman testified that she underwent surgery to insert "plates, pins, rods and screws." (1T. at 155). Ms. Coleman was scheduled for a second surgery the day following her testimony in court. (Id. at 156 — 157). Further, she has a permanent scar. (Id.).
 {¶ 6} Ms. Coleman testified that she observed appellant with two different weapons during the incident. Ms. Coleman testified that appellant threatened her with each of the weapons. (1T. at 151). She notified the 911 operator that there were guns in the house. (Id.). She further told the operator that appellant had a small one and a bigger one. (Id. at 151). Ms. Coleman testified that appellant had threatened her with the shotgun, which he had retrieved from underneath the couch. (Id. at 140). After falling to the ground, Ms. Coleman looked back to see appellant holding the smaller shotgun. (Id. at 152). Appellant held that weapon in Ms. Coleman's face. (Id. at 153). *Page 4 
 {¶ 7} Ms. Coleman's 911 call was played during the trial. During the call a male voice, identified as appellant's, can be heard screaming that no guns were in the house and threatening the caller.
 {¶ 8} Christina Hartum testified that appellant did not possess any firearms nor did he threaten anyone with a firearm during the events of April 13, 2007. However, in her written statement to the police given at the time of the incident, Ms. Hartum informed the police that appellant had assaulted both women as they attempted to flee the residence. At trial, Cristina Hartum testified that the police forged her written statement. (1T. at 239).
 {¶ 9} Daniel Castle testified that the appellant did not possess a firearm that day nor did he threaten anybody with a firearm. Mr. Castle testified that he was present when Ms. Coleman arrived and that she never left the living room during her visit.
 {¶ 10} Mr. Castle also testified that he was aware Ms. Coleman had called the police that day, the police were on their way, and that he was a witness to a crime. However, he chose to leave the residence before the police arrived. When asked what pressing matter caused him to leave the scene of the crime before the police had arrived, Mr. Castle testified that he had to till the dirt in his yard.
 {¶ 11} The police responded to a domestic violence call to the residence of Christina Hartrum. Medical personnel were called to assist in treating Cathy Coleman, but she refused treatment.
 {¶ 12} Christina Hartrum gave the police permission to search the residence. Inside the officers located a larger shotgun underneath the couch and a second *Page 5 
smaller shotgun "pistol" was found under the kitchen sink. Both of the shotguns had been altered in such a manner as to meet the definition of a dangerous ordinance. (1T. at 186-187).
 {¶ 13} Upon discovery of the weapons appellant was placed under arrest. Patrolman David Arndt testified that while the appellant was under detention, he was transported to the hospital due to complaints of chest pains. (1T. at 101-102). He also testified that while at the hospital the appellant ripped the EKG leads off his chest and ran out of the examination room in an attempt to escape from that detention. (1T. at 103-105). Patrolman Arndt explained that while attempting to escape, the appellant turned towards the officer, balled up his fist and pulled back as if to strike him. (1T. at 106). Patrolman Arndt testified that he deployed his taser device, which subdued the appellant. (T. at 106-107).
 {¶ 14} The jury returned a verdict finding appellant guilty on all counts. The appellant was sentenced as follows: Count 1: two (2) years; Firearm Specification: mandatory three (3) years; Count 2: three (3) years; Count 3: three (3) years; and Count 4: one (1) year. The firearm specification of three (3) years is to run consecutive with the three-year sentence imposed in Count 2. Counts 1,2,3,4 are to run concurrently. Appellant was ordered to pay all costs of prosecution, court costs, court-appointed counsel costs, and any fees permitted. Appellant was also ordered to pay restitution for medical expenses of the victim, Ms. Coleman. No fine was imposed.
 {¶ 15} This Court granted appellant's motion to file a delayed appeal finding that counsel had not been assigned to represent appellant until after the time for filing the *Page 6 
notice of appeal had expired. Appellant submits the following four assignments of error for our consideration:
 {¶ 16} "I. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.
 {¶ 17} "II. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 18} "III. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 19} "IV. THE COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO INCLUDE THE AFFIRMATIVE DEFENSE TO ESCAPE IN THE JURY INSTRUCTIONS."
 I. {¶ 20} In his First Assignment of Error, appellant maintains that the State failed to produce sufficient evidence to sustain his conviction for felonious assault.[1] Specifically, appellant maintains that the State failed to prove that he knowingly caused serious physical harm to Cathy Coleman. We disagree.
 {¶ 21} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, *Page 7 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 22} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259 superseded by State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 23} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App. 3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St. 3d at 386.
 {¶ 24} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from *Page 8 
a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St. 3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 25} In the case at bar, appellant was convicted of felonious assault with a firearm specification. R.C. 2903.11(A) provides a definition of felonious assault:
 {¶ 26} "(A) No person shall knowingly do either of the following:
 {¶ 27} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 28} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *"
 {¶ 29} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 30} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 31} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App. 3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E. 2d 412).
 {¶ 32} Ms. Coleman testified that she was pushed, "a full force slam into [her] back . . ." (1T. at 145). The push was with both hands. (Id.). She further testified that the *Page 9 
appellant was right behind her as she was trying to get out the door of the residence. (Id. at 144). After hitting the ground, Ms. Coleman looked back to see appellant "standing in the doorway." (Id. at 146).
 {¶ 33} "Serious physical harm to persons" as defined in R.C. 2901.01(A) (5) means any of the following in pertinent part:
 {¶ 34} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 35} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 36} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity."
 {¶ 37} In the case at bar, Ms. Coleman testified that she underwent surgery to insert "plates, pins, rods and screws." (1T. at 155). The fall resulted in fifteen fractures to the bone. (Id. at 156). Ms. Coleman was scheduled for a second surgery the day following her testimony in court. (Id. at 156 — 157). Further, she has a permanent scar. (Id.).
 {¶ 38} The jury could have reasonably concluded from Ms. Coleman's testimony that she had suffered some temporary, substantial incapacity [R.C. 2901.01(A) (5) (c)] or that she had suffered acute pain of such duration as to result in substantial suffering [R.C. 2901.01(A) (5) (e)].
 {¶ 39} Accordingly, the State presented sufficient evidence that the victim suffered "serious physical harm." R.C. 2901.01(A) (5). Further, the State presented sufficient evidence that a "firearm" was used during the commission of the offenses. R.C. 2923.11; R.C. 2941.145. *Page 10 
 {¶ 40} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S. Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v.Scheffer (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 41} Although appellant cross-examined the witnesses and argued that he did not inflict, attempt to inflict, or threaten to inflict serious physical harm, and further that the victim was not credible because she may have been involved in a traffic mishap, and was possibly under the influence at the time, and further is a convicted felon, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St. 3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 42} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill *Page 11 
(1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 43} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of felonious assault with a firearm specification.
 {¶ 44} We hold, therefore, that the state met its burden of production regarding each element of that crime and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 45} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 46} In his Second Assignment of Error appellant contends that his conviction for the firearm specification and having a Weapon While Under a Disability[2] are against the manifest weight of the evidence. Specifically, appellant contends that contradictions within the evidence are sufficient to render his conviction improper. We find appellant's assertions meritless.
 {¶ 47} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 48} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St. 3d 380,678 N.E.2d 541. In Thompkins, the *Page 12 
court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E. 2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 49} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St. 3d 380, 678 N.E.2d 541. Thus, the civil-manifest- *Page 13 
weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v. Barkley (1997),119 Ohio App. 3d 155, 159, 694 N.E.2d 989." State v. Wilson, 713 Ohio St. 3d 382,387-88, 2007-Ohio-2202 at ¶ 25-26; 865 N.E. 2d 1264, 1269-1270.
 {¶ 50} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 51} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E. 2d 498.
 {¶ 52} Appellant, in the case sub judice, was convicted of a firearm specification pursuant to R.C. 2941.145. Such section states, in relevant part, as follows:
 {¶ 53} "(A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the *Page 14 
indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 54} In turn, "firearm" is defined in R.C. 2923.11 as follows: "(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable
 {¶ 55} Pursuant to R.C. 2923.11(B)(2), "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Thus, in determining whether a firearm was operable or could have been rendered operable at the time of the offense, the trier of fact is permitted to consider all relevant facts and circumstances surrounding the crime, including any implicit threats made by the individual controlling the firearm. State v. Thompkins,78 Ohio St. 3d 383, 1997-Ohio-52, 678 N.E. 2d 541, paragraph one of the syllabus. See also State v. Murphy (1990), 49 Ohio St. 3d 206,551 N.E. 932. As noted by the Ohio Supreme Court in Thompkins, supra "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384, 678 N.E. 2d 541. In the case at bar, Detective Timothy Elliget, a *Page 15 
criminalist with the City of Newark Police Department, testified that he test fired the weapons and each was operable. (1T. at 179).
 {¶ 56} Upon our review of the record and after reviewing all relevant facts and circumstances surrounding the crime, we find that appellee proved beyond a reasonable doubt that the firearm used by appellant was operable or could have been readily rendered operable at the time of the offense.
 {¶ 57} Ms. Coleman testified that appellant threatened her with each of the weapons. (1T. at 151). She notified the 911 operator that there were guns in the house. (Id.). She further told the operator that appellant had a small one and a bigger one. (Id. at 151). Ms. Coleman further testified that appellant had threatened her with the shotgun, which he had retrieved from underneath the couch. (Id. at 140). After falling to the ground, Ms. Coleman looked back to see appellant still holding the smaller shotgun. (Id. at 152). Appellant held that weapon in Ms. Coleman's face. (Id. at 153).
 {¶ 58} Possession may be actual or constructive. State v. Butler
(1989), 42 Ohio St.3d 174, 176, 538 N.E.2d 98; State v. Haynes (1971),25 Ohio St.2d 264, 267 N.E.2d 787; State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery
(1976), 46 Ohio St. 2d 316, 332, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly,137 Ohio App.3d 134, 738 N.E.2d 93. Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. State v. Butler, supra; State v. Barr (1993),86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248; State v. Morales, 5th Dist. No. 2004 CA 68, *Page 16 2005-Ohio-4714 at ¶ 50; State v. Moses, 5th Dist. No. 2003CA00384, 2004-Ohio-4943 at ¶ 9. Ownership of the contraband need not be established in order to find constructive possession. State v.Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13, citing State v.Mann, (1993) 93 Ohio App. 3d 301, 308, 638 N.E.2d 585. Furthermore, possession may be individual or joint. Wolery, 46 Ohio St. 2d at 332,348 N.E.2d 351. Multiple individuals may constructively possess a particular weapon simultaneously. State v. Pitts, 4th Dist. No. 99 CA 2675, 2000-Ohio-1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. State v. Hankerson (1982), 70 Ohio St.2d 87, 91,434 N.E.2d 1362, 1365, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155,74 L.Ed.2d 130.
 {¶ 59} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction."' State v. Jenks (1991), 61 Ohio St.3d 259, 272,574 N.E.2d 492 at paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value [.]"' Jenks, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt."' Jenks, 61 Ohio St.3d at 272,574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990),51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series *Page 17 
of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott, 51 Ohio St.3d at 168,555 N.E.2d 293, citing Hurt, 164 Ohio St. at 331, 130 N.E.2d 820.
 {¶ 60} In Ulster County Court v. Allen (1979), 442 U. S. 140,99 S. Ct. 2213, the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U. S. 142-143, 99 S.Ct. 2217. The Court noted that the presumption was not a mandatory; rather it was a permissive inference available only in certain circumstances. Further, the jury could ignore the presumption even if there was no affirmative proof offered in rebuttal by the accused. Id. at 160-162,99 S.Ct. at 2226-2227. Finally, the trial judge in Allen explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons." Id. at 161, 99 S.Ct. at 2226.
 {¶ 61} Appellant had possession of the shotgun and the smaller gun during the incident at the residence. The weapons were found inside the home where appellant was present and resided on occasion. This evidence was sufficient to convict him of the offenses.
 {¶ 62} Finally, appellant was convicted of Unlawful Possession of a Dangerous Ordinance. Appellant concedes that the both shotguns had been altered in such a way *Page 18 
that they met the legal definition of a dangerous ordinance pursuant to R.C. 2923.11(K). As previously noted, the record contains evidence that appellant was in possession of both weapons.
 {¶ 63} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 64} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 65} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 66} Accordingly, appellant's Second Assignment of Error is overruled. *Page 19 
 III. {¶ 67} In his Third Assignment of Error, appellant argues that he was denied effective assistance of trial counsel.
 {¶ 68} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 69} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 70} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; *Page 20 Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Strickland, supra; Bradley, supra.
 {¶ 71} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 72} First, appellant argues that if his trial counsel had not stipulated to the Having a Weapon While Under a Disability charge the jury could not have found that he had possessed the two shotguns found inside the home.
 {¶ 73} Trial counsel did not stipulate to the Having a Weapon While Under a Disability; rather the stipulation concerned appellant's previous conviction for robbery, a felony of violence. Appellant's trial counsel was successful in removing any reference to the specific crime and the fact that it was a felony of violence from the stipulation that was presented to the jury.
 {¶ 74} Appellant does not articulate how requesting a severance and separate trial of that charge would have resulted in a different outcome or trial strategy. In light of our disposition of appellant's First and Second Assignments of Error, appellant's claim of ineffective assistance fails to establish prejudice, namely, "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, 42 Ohio St.3d 136,538 N.E.2d 373, paragraph three of the syllabus. Since the issue may be disposed of under the second prong of the *Page 21 Strickland test, there is no need to consider whether the failure to make such a request was ineffective assistance of counsel.
 {¶ 75} Appellant next argues that counsel failed to make a Criminal Rule 29 Motion for Acquittal at the close of the appellant's case.
 {¶ 76} In State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus, the Ohio Supreme Court held:
 {¶ 77} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 78} A motion for acquittal is properly denied if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 555 N.E.2d 689, paragraph one of the syllabus. In the case sub judice, we conclude, given the evidence, there was sufficient evidence as to each element of the offenses and a motion for acquittal, at the close of the appellant's case, would have served no purpose. Thus, appellant was not prejudiced by defense counsel's failure to make a meritless motion. State v.Keeton, Richland App. No. 03 CA 43, 2004-Ohio-3676 at ¶ 100-102.
 {¶ 79} The conduct raised by appellant does not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of *Page 22 
him. The results of the proceedings were not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 80} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 81} In his Fourth Assignment of Error appellant argues that the trial court erred in not instructing the jury on the affirmative defenses to the charge of escape. We disagree.
 {¶ 82} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St. 3d 206, paragraph two of the syllabus. If a requested instruction contain a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. State v.Nelson (1973), 36 Ohio St. 2d 79, paragraph one of the syllabus. However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. Riley v. Cincinnati (1976),46 Ohio St. 2d 287, 75 O.O.2d 331, 348 N.E.2d 135; Murphy v. CarrolltonManufacturing Co. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v.Huettner (1971), 28 Ohio St.2d 54, 275 N.E.2d 340, at syllabus;Murphy v. Carrollton Manufacturing Co., supra; State v. Coleman, 6th Dist. No. S-02-41, 2005-Ohio-318 at ¶ 12. *Page 23 
 {¶ 83} R.C. 2921.34 defines the offense of "escape" and states in relevant part:
 {¶ 84} "(A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.
 {¶ 85} "* * *
 ¶ 86} "(B) Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, is not a defense to a charge under this section if the detention is pursuant to judicial order or in a detention facility. In the case of any other detention, irregularity or lack of jurisdiction is an affirmative defense only if either of the following occurs:
 {¶ 87} "(1) The escape involved no substantial risk of harm to the person or property of another.
 {¶ 88} "(2) The detaining authority knew or should have known there was no legal basis or authority for the detention . . ."
 {¶ 89} R.C. 2921.01(E) defines "detention" to mean, among other things, "arrest." "A person is under `detention' as that term is used in R.C. 2921.34, when he is arrested and the arresting officer has established control over his person." State v. Reed (1981),65 Ohio St.2d 117, syllabus. Once an arrest is effected, the individual is in a "detained" status, and if he breaks that detention, he is guilty of a violation of R.C. 2921.34. State v. Cross (1979), 58 Ohio St. 2d 482. *Page 24 
 {¶ 90} Appellant does not argue that there was no legal basis for his arrest or detention. Nor does he argue that the arresting officer lacked jurisdiction to arrest him. Accordingly, appellant points to no evidence in the record, nor does he cite any legal authority, to support his contention that there was an "irregularity in bringing about or maintaining his detention, or a lack of jurisdiction of the committing or detaining authority" so as to require the trial court to give the requested instruction on affirmative defenses.
 {¶ 91} Because appellant fails to properly reference portions of the record supporting his claim so as to entitled him to have the jury instructed on those affirmative defenses, appellant cannot demonstrate the claimed error. See Daniels v. Santic, Geauga App. No. 2004-G-2570,2005-Ohio-1101, at ¶ 13-15. See, also, App. R. 12(A) (2) and 16(A) (7);Graham v. City of Findlay Police Dept. (Mar. 19, 2002), Hancock App. No. 5-01-32 (stating, "[t]his court is not obliged to search the record for some evidence of claimed error. * * * Rather, an appellant must tell the appellate court specifically where the trial court's alleged errors may be located in the transcript"); State ex rel. Physicians Commt. forResponsible Medicine v. Ohio State Univ. Bd. of Trustees,108 Ohio St.3d 288, 2006-Ohio-903, at ¶ 13; State ex rel. Petro v. Gold,166 Ohio App.3d 371, 2006-Ohio-943, at ¶ 94, appeal not allowed,110 Ohio St.3d 1439, 2006-Ohio-3862, reconsideration denied, 111 Ohio St.3d 1418,2006-Ohio-5083; Porter v. Keefe, Erie App. No. E-02-018, 2003-Ohio-7267, at ¶ 109-113.
 {¶ 92} The jury's conclusion that appellant was under detention, and purposely broke detention when he fled from the hospital, is supported by the evidence in the record. See, e.g. State v. Davis, (1992),81 Ohio App.3d 706, 612 N.E.2d 343; State v. *Page 25 Diodati (1991), 77 Ohio App.3d 46, 601 N.E.2d 69; State v. Downs (March 17, 1988), Cuyahoga App. No. 53545.
 {¶ 93} Accordingly, appellant's Fourth Assignment of Error is overruled.
 {¶ 94} For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is affirmed.
 Gwin, J., Hoffman, P.J., and Wise, J., concur *Page 26 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is affirmed. Costs to appellant.
[1] Appellant does not challenge his convictions for Escape, Having a Weapon While Under a Disability or Possession of a Dangerous Ordinance as being against the sufficiency of the evidence under this Assignment of Error.
[2] Appellant does not challenge his convictions for Felonious Assault, Escape, or Possession of a Dangerous Ordinance as being against the manifest weight of the evidence under this Assignment of Error. *Page 1